IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

GREAT FALLS DIVISION

_____

| | |
|---|---|
| PATRICIA A. SWIMS UNDER, ) | |
| ) | |
| Plaintiff, ) | CV-10-49-GF-SEH-RKS |
| ) | |
| ) | FINDINGS AND |
| MICHAEL J. ASTRUE, ) | RECOMMENDATIONS |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |

_____

Plaintiff Patricia Swims Under ("Ms. Swims Under") seeks judicial review of the decision of Defendant, Commissioner of Social Security ("Commissioner"), denying her applications for Disability Insurance Benefits("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for Supplemental Security Income benefits under Title XVI of the Social

Security Act, 42 U.S.C. §§ 1381-1383f. 42 U.S.C. § 405(g). The case was reassigned to the undersigned for the submission of proposed findings and recommendations by United States District Judge Sam E. Haddon on September 27, 2010. Now pending before the Court are the parties' cross motions for summary judgment (Ct. Doc. Nos. 15, 19). The motions are considered fully briefed and submitted. Having considered the issues raised by the parties, together with the administrative record, the Commissioner's motion should be granted, and the denial of benefits should be affirmed.

## I. PROCEDURAL BACKGROUND

Plaintiff protectively filed her application for SSI on January 8, 2004. Tr. at 66-70. Her application was denied initially on November 17, 2005. Id. at 225-238. The Appeals Council vacated the 2005 hearing decision and remanded this case back to the ALJ to reevaluate Ms. Swims Under's credibility and past relevant work (Tr. 242-46). The ALJ held a second administrative hearing (Tr. 438-503) and on February 14, 2008, issued a second decision finding Ms. Swims

Under not disabled. (Id. 13-27). The Appeals Council denied Ms. Swims Under's request for review, making the ALJ's February 2008 decision the final decision of the Commissioner. (Tr. 7-11). Jurisdiction vests pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Court's review in this case is limited. The Commissioner's decision may be set aside only where the decision is not supported by substantial evidence or where the decision is based on legal error. Maounis v. Heckler, 738 F.2d 1032, 1034 (9th Cir. 1984) (citing Delgado v. Heckler, 722 F.2d 570, 572 (9th Cir. 1983)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence has also been described as "more than a mere scintilla" but "less than a preponderance." Desrosiers v. Sec. of Health and Human Servs., 846 F.2d 573, 576 (9th Cir. 1988). The District Court must consider the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusion. Green v.

Heckler, 803 F.2d 528, 530 (9th Cir. 1986) (citing Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985)). While the Court may not substitute its findings for those of the Commissioner, Palmer v. Celebrezza, 334 F.2d 306, 308 (3rd Cir. 1964), it may reject the findings not supported by the record.

**III. BURDEN OF PROOF**

A claimant is disabled for purposes of the Social Security Act if: (1) the claimant has a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months," and (2) the impairment or impairments are of such severity that, considering the claimant's age, education and work experience, the claimant is not only unable to perform previous work, but also cannot "engage in any other kind of substantial gainful work which exists in the national economy." Schneider v. Commr. of Soc. Sec. Admin., 223 F.3d 968, 974 (9th Cir. 2000) (citing 42 U.S.C. §1382(a)(3)(A)-(B)).

In determining whether a claimant is disabled, the

Commissioner follows a five-step sequential evaluation process. <u>Corrao v. Shalala</u>, 20 F.3d 943, 946 (9th Cir. 1994) (<u>citing</u> 42 U.S.C. § 1382C(a)(3)). If the Commissioner finds that a claimant is disabled or not disabled at any step in this process, the review process is terminated. <u>Id</u>. at 946. In the present case, the parties agree that the ALJ properly performed the first two steps of the process. At step three the ALJ must determine whether a claimant's impairment meets or equals the criteria of the listing of impairments. Step four provides that if the claimant does not have a listed impairment, then the claimant must establish a prima facie case of disability by showing an inability to engage in past work because of the medical impairments. <u>Id</u>. If that case is made, at step five the burden shifts to the Commissioner to prove that the claimant can engage in other types of substantial gainful work existing in the national economy given the claimant's age, education, work experience and residual functional capacity ("RFC"). <u>Jones</u>, 760 F.2d at 995.

**IV.  PLAINTIFF'S ARGUMENTS**

Ms. Swims Under argues first that the ALJ failed to consider the uncontradicted findings by her treating health care providers. C.D. 16, p. 7. Ms. Swims Under also argues that the ALJ did not find her entirely credible. C.D. 16, p.20-21. Ms. Swims Under contends that the limitations described by her are supported by substantial objective medical evidence. C.D. 16, p. 8. She argues the ALJ disregarded the opinions of her treating physicians without clear and convincing evidence. C.D. 16, p. 20. She alleges the ALJ failed to consider her back pain and include it as a severe impairment. C.D. 16, p. 21. Finally, she alleges the ALJ overstated her daily activities in concluding she was not disabled. C.D. 16, p.15.

**V.  COMMISSIONER'S ARGUMENTS**

The Commissioner argues that the ALJ weighed all the evidence and reasonably determined Ms. Swims Under could perform limited light work. C.D. 20, p.2. The Commissioner argues the ALJ gave clear and convincing reasons why he found Ms. Swims Under's subjective testimony not entirely credible. C.D. 20, p.3. These reasons include that Ms. Swims Under's admitted daily

6

activities are not consistent with disabling pain, and her testimony of disabling pain is not supported by her medical records. C.D. 20, p.4-7.

The Commissioner states that the ALJ evaluated all of the medical evidence, and found none of her treating physicians described her as disabled or unable to work. C.D. 20, p.5. Regarding Ms. Swims Under's back pain, the Commissioner argues the ALJ correctly concluded that the clinical and neurological evidence did not support Ms. Swims Under's subjective pain complaints. C.D. 20, p.6. The Commissioner further argues that Ms. Swims Under's testimony regarding her knee pain did not match the medical evidence. C.D. 20, p. 7. Specifically, Ms. Swims Under testified that her knee was swollen and painful almost every day, but her reports to her treating physicians described her knee as "doing very well other than the continued stiffness." C.D. 20, p.7. X-rays of her knee after the replacement showed it was stable. C.D. 20, p.7.

The Commissioner refutes Ms. Swims Under's statement that no treating physicians questioned her

limitations or pain by pointing to evidence demonstrating her treating physicians could not identify the source of her pain, and thus refused her prescription pain medication requests. C.D. 20, p. 8. The Commissioner argues the ALJ properly accounted for Ms. Swims Under's limitations in the residual functional capacity assessment. C.D. 20, p.9. Finally, the Commissioner argues the ALJ properly relied on the vocational expert's testimony at steps four and five in denying Ms. Swims Under benefits. C.D. 20, p. 10.

**VI. DISCUSSION**

The ALJ's decision that Ms. Swims Under is not disabled is supported by substantial evidence.

At step one the ALJ correctly determined that Ms. Swims Under has not engaged in substantial gainful activity since her application date of January 8, 2004. Tr. 18.

The ALJ determined at step two that Ms. Swims Under had the following severe impairments: chronic left rotator cuff syndrome, right hip degenerative joint disease with history of right total replacement, and left knee degenerative joint disease status point

left total knee arthroplasty. Tr. 18. This finding is supported by substantial evidence, and the parties do not dispute it. The ALJ considered Ms. Swims Under's lower back medical records, and determined the evidence did not support a severe impairment. Tr. 19. This finding is supported by substantial evidence, as all of Ms. Swims Under's spinal X-rays were normal apart from very minor spurring. Tr.326-330. Ms. Swims Under's treating physician's decision to treat her back pain conservatively with physical therapy is further proof that her back pain is not a severe impairment. *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007)(conservative treatment by treating physician is sufficient to disregard plaintiff's subjective testimony of severity of impairment). The ALJ also correctly determined from Ms. Swims Under's medical records that her stomach problems and Hepatitis C were non-severe impairments. Tr. 19, 314-315. The parties do not dispute this finding.

At step three the ALJ correctly determined Ms. Swims Under did not have an impairment that met the listed impairments in 20 C.F.R. Part 404, Subpart P,

Appendix 1. Tr. 19. The ALJ examined the medical evidence and determined Ms. Swims Under's degenerative joint disease did not prevent her from ambulating effectively or performing fine or gross movements. Tr. 19. The ALJ determined correctly that Ms. Swims Under's left total knee arthroplasty did not meet the listed impairments. Tr. 19. Ms. Swims Under's postoperative progress notes demonstrate that she reported her knee has been doing well since her surgery apart from knee stiffness. Tr. 336-373. There were no objective signs, such as swelling or instability of the implant visible in X-rays, to support the pain Ms. Swims Under testified to at the hearing. Tr. 360. The ALJ had substantial evidence to support his conclusion that Ms. Swims Under does not have an impairment that meets those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

For step four, the ALJ carefully considered Ms. Swims Under's entire record in determining she has the residual functional capacity to perform light work with many limitations. Tr. 19-20. The ALJ concluded that Ms. Swims Under's impairments could reasonably

produce her alleged symptoms, but found her testimony regarding the intensity, persistence, and limiting effects of her symptoms not entirely credible. Tr. 22. The AlJ's determination was based on Ms. Swims Under's overstatement of her symptoms and limitations, and the inconsistency of her testimony with her documented medical records. Tr. 23.

Specifically, Ms. Swims Under testified that her left knee was swollen all the time after her surgery, and that her knee pain did not improve after manipulation. Both of these statements are in direct contradiction with her reports to treating physicians documented in medical records from the relevant time periods. Tr. 356.

Regarding Ms. Swims Under's shoulder pain, the ALJ credited the lifting and use limitations from her treating physician, but also noted that an MRI showed no acute injury and she was treated conservatively for her pain complaints. Tr. 22, 191-194. These inconsistencies and medical findings provided the ALJ with clear and convincing evidence for finding Ms. Swims Under's testimony less than credible. See *Morgan*

*v. Comm'r, Soc. Sec. Admin.*, 169 F.3d 595, 599-560 (9th Cir. 1999).

The ALJ was within his discretion in rejecting the opinion of Ms. Devereaux, the rehabilitation counselor, that Ms. Swims Under was not employable. Ms. Devereaux based her opinion on an apparently erroneous diagnosis of rheumatoid arthritis, when Ms. Swims Under has only been diagnosed with osteoarthritis. Tr. 24. Ms. Devereaux's medical conclusions are contradicted by all of Ms. Swims Under's treating physicians, none of whom restricted Ms. Swims Under's employment or found her to be disabled. Tr. 24.

The ALJ took Ms. Swims Under's physical limitations into account in considering her residual functional capacity. Even given her severe limitations, the impartial vocational expert identified several jobs that Ms. Swims Under could perform. Tr. 23. These jobs include Ms. Swims Under's past relevant work as a personal care attendant, and other jobs such as ticket taker, photocopy operator, and school bus monitor. Tr. 495-500. Although there

is some confusion as to when Ms. Swims Under worked as a personal care attendant, she testified to working as a personal care attendant for approximately one year, ending in 1995. Tr. 450-451. "Work experience applies when it was done within the last 15 years, lasted long enough for you to learn to do it, and was substantial gainful activity." 20 CFR § 416.965. By Ms. Swims Under's testimony regarding her work as a personal care attendant, 20 CFR § 416.965 is met. The ALJ correctly concluded Ms. Swims Under was not disabled by relying on the vocational expert's opinion that Ms. Swims Under could perform her past relevant work as a personal care attendant. Tr. 25.

The ALJ continued to step five even though not required to do so, having found Ms. Swims Under not disabled at step four. The ALJ again found Ms. Swims Under not disabled at step five. Tr. 26. The ALJ considered Ms. Swims Under's age, education, work experience, residual functional capacity, and the testimony of the vocational expert in concluding she could successfully adjust to other work that exists in significant numbers in the national economy. Tr. 26.

The ALJ's conclusion was again supported by substantial evidence at step five.

In sum, a review of the transcript and the parties' submissions reveals the ALJ followed the law and his decisions are supported by substantial evidence.

For the foregoing reasons,

**IT IS HEREBY RECOMMENDED** that Plaintiff's Motion for Summary Judgment be DENIED.

IT IS FURTHER RECOMMENDED that the Commissioner's Motion for Summary Judgment be GRANTED.

**NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT**

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Findings and Recommendations within fourteen (14) business days of the date entered as indicated on the Notice of Electronic Filing. A district judge will make a de novo determination of those portions of the Findings and Recommendations to which objection is made. The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendations. Failure

to timely file written objections may bar a de novo determination by the district judge.

DATED this 20th day of December, 2010.

                                              /s/Keith Strong
                                              Keith Strong
                                              United States Magistrate Judge